UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| NIKKI SIMMONS, Individually and as | § | |
| Administratrix of the Estate of | § | |
| Wendell Carl Simmons, Deceased; | § | |
| LOGAN ANN SIMMONS, Individually, | § | |
| CHAD KENNY SIMMONS, Individually, | § | |
| JOSHUA CARL SIMMONS, Individually, | § | |
| NATHAN WADE SIMMONS, Individually, | § | Cause No. 2:16-CV-00089-J |
| LESLIE SIMMONS, Individually, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| RANDALL COUNTY; JOEL W. | § | |
| RICHARDSON, Sheriff of Randall County, | § | |
| in his official and individual capacities; | § | |
| JOHN DOES 1-10, in their individual capacity; | § | |
| JANE DOES 1-6, in their individual capacity, and | § | |
| CORRECT CARE SOLUTIONS, LLC | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO JOEL W. RICHARDSON'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

Respectfully submitted,

FARGASON, BOOTH, ST. CLAIR,
RICHARDS & WILKINS, LLP
4716 Fourth Street, Suite 200
Lubbock, TX 79416
P.O. Box 5950
Lubbock, TX 79408-5950
Telephone:    (806) 744-1100
Facsimile:    (806) 744-1170
Email:    damon@lbklawyers.com

By:    _____
Damon Richards

ATTORNEYS FOR PLAINTIFFS

## TABLE OF CONTENTS

I.      SUMMARY ................................................................................................ 1

II.     RULE 12(b)(6) STANDARD OF REVIEW ..................................................3

III.    LIMITED DISCOVERY NECESSARY ........................................................4

IV.     SHERIFF RICHARDSON IS NOT ENTITLED TO QUALIFIED IMMUNITY IN HIS INDIVIDUAL CAPACITY ........................................................................................5

        A.      Claim of Excessive Force Against a Pretrial Detainee ...........................6

                1.      Constitutional Violation.................................................................6

                        a.      Factor One......................................................................7

                        b.      Factor Two .....................................................................7

                        c.      Factor Three...................................................................7

                        d.      Factor Four.....................................................................7

                        e.      Factor Five .....................................................................8

                2.      Clearly Established ........................................................................8

        B.      Claim of Denial of Adequate Medical Care .......................................10

                1.      Condition of Confinement ...........................................................10

                2.      Episodic-Acts-or-Omissions .......................................................12

        C.      Failure to Protect................................................................................15

V.      CLAIMS AGAINST RICHARDSON IN HIS OFFICIAL CAPACITY ........................16

VI.     CLAIMS AGAINST SHERIFF RICHARDSON IN HIS INDIVIDUAL CAPACITY   ........................................................................................................17

        A.      Claims Against Sheriff Richardson in his individual capacity .............15

                1.      Supervisory Liability ...................................................................15

VII.    PLAINTIFFS HAVE PROPERLY PLED CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT ("ADA") AND THE REHABILITATION ACT ..........................21

VIII.   PLAINTIFFS' WRONGFUL DEATH AND SURVIVAL CLAIMS ..............................22

IX.   EXEMPLARY/PUNITIVE DAMAGES ..........................................................................22

X.   LEAVE TO AMEND ........................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................3

*Atteberry v. Nochona Gen. Hosp.*, 430 F.3d 245, 255 (Fifth Circuit 2005) .................................18

*Backe v. LeBlanc*, 691 F.3d 634, 648 (5th Cir. 2012)..................................................................4, 5

*Barrow v. Greenville Indep. Sch. Dist.*, *No. 3:00-CV-0913-D,* 2005 U.S. Dist. LEXIS 16043, 2005 WL 1867292, at *12 (N.D. Tex. Aug. 5, 2005) .............................................................................24

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..........*3*

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ........................................................................8, 10, 11

*Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) .......................................................12

*Bishop v. Shell Oil Co.,* No. 07-2832, 2008 U.S. Dist. LEXIS 39820, 2008 WL 2079944, *1-2 (E.D. La. 5/16/08) (Engelhardt ▼, J)...........................................................................................3

*Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)...............................................................13

*Brown v. Bolin, 500 F. App'x 309 (5th Cir. 2012)*.......................................................................23

*Brown v. Wichita Cnty., Tex., CIV.A. 7:05-CV-0108O, 2009 U.S. Dist. LEXIS 68957, 2009 WL 2393821, at *4 (N.D. Tex. Aug. 4, 2009)*.................................................................................23

*Cantrell v. City of Murphy*, 666 F. 3d 911, 922 (5th Cir. 2012).......................................................5

*Christopher v. Harbury,* 536 U.S. 403, 416, 122 S. Ct. 2179, 2187, 153 L. Ed. 2d 413 (2002) ....3

*City of Amarillo v. Martin, 971 S.W.2d 426, 427 (Tex. 1998)*......................................................22

*Colle v. Brazos Cnty., Tex., 981 F.2d 237, 244 (5th Cir. 1993)*....................................................19

*DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)................10

*Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)* ......................14, 19

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) .........................................24

*Duvall v. Dallas Cnty*, 631 F.3d 203, 206-07 (5th Cir. 2011) .......................................................11

*Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) .............................................................14, 18

*Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)........................13, 19

*Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir., 1980)...............................................17, 19

*Farmer v. Brennan*, 511 U.S. 825...............................................................................8, 9, 14, 15

*Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*.................................25

*Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011)* ....................................................22

*Freeman v. Gore*, 483 F. 3d 404, 410 (5th Cir. 2007) ...................................................................5, 6

*Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) .................................................................14

*Gates v. Cook,* 376 F. 3d 323, 332 (5th Cir. 2004) ...........................................................................8

*Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001)....................................................................18

*Guillot v. Day,* 95 F.2d 1127 (5th Cir. 1996) (quoting *Wicks v. Miss. State Emp't Servs.,* 41 F.3d
991, 994 (5th Cir. 2012) ...................................................................................................... 4

*Graham v. Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)............6, 7, 16

*Hare v. City of Corinth, Miss*., 74 F.3d 633 (5th Cir. 1996) (*en banc*) ............9, 10, 11, 12, 13, 15,

*Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th Cir. 1999) ...........................................................14

*Henderson v. Sheahan*, 196 F.3d 839, 847 (7th Cir. 1999) ...........................................................23

*Howell v. Evans, 922 F.2d 712, 720 (11th Cir. 1991)*....................................................................19

*Ibrahim v. City of Houston, TX, No. CIV.A. H-07-4329,* 2008 U.S. Dist. LEXIS 57135, 2008 WL
2962887, at *7 (S.D. Tex. July 29, 2008) ..........................................................................24

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) ........................................4

*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) ...........................13

*Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010)*.......................................................................22

*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)...................16

*Kingsly v. Hendrickson,* 135 S. Ct. 2466, 192 L. Ed. 2d 416, 2015 WL 2473447, at *6-8 (2015) .6

*Lawson v. Dallas County*, 286 F.2d 257, 262 (5th Cir. 2002) .................................................14, 20

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) ............................................................................................4

*Lion Boulos v. Wilson*, 834 F. 2d 504, 507-08 (5th Cir. 1987) ...........................................................5

*Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ..................................................................14

*Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).16

*Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999) .....................................................................11

*Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009).....................................................17

*Rhodes v. Chapman*, 452 U.S. 337, 347-49, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) ................11

*Rhyne v. Henderson Cnty., 973 F.2d 386, 390-91 (5th Cir. 1992)*.....................................................23

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ............................................................4

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) .......................................................25

*Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc) ..............................................................................................................................5

*Scott v. Moore*, 114 F.3d at 53 ..................................................................................................11, 13

*Shepherd v. Dall. Cnty., 591 F.3d 445, 452 (5th Cir. 2009)* .............................................11, 13, 15

*Smith v. Wade*, 461 U.S. Dist. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983) ........................24

*Swierkiewicz v. Sorema,* 534 U.S. 506, 511, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002)............3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).........................................................................................................................................3

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011)........................................4

*Thompson v. Beasley*, USDC Northern District of Mississippi (2015); 309 F.R.D. 236, 92 Fed. R. Serv. 3d (*Callaghan*) 317........................................................................................................................7

*Turner v. Upton County*, 915 F.2d 133, 136-37 (5th Cir. 1990)................................................17, 19

*Walker v. Butler,* 967 F.2d. 176, 178 (5th Cir. 1992) ......................................................................14

*Wicks v. Miss. State Emp't Servs.,* 41 F.3d 991, 994 (5th Cir. 2012) ...........................................4, 5

*Williams v. Kaufman Cnty.,* 352 F.3d 994, 1015 (5th Cir. 2003) ...................................................24

*Wilson v. Seiter,* 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L.Ed. 2d 271 (1991)............................9

*Woodward v. Corr. Med. Servs.* 1237, 1253 (9th Cir. 1982).........................................................13

*Young v. City of Augusta*, 59 F.3d 1160, 1171-72 (11th Cir. 1995) ..............................................13

## **Statutes**

Fed. R. Civ. P. Rule 8(a)(2) ...........................................................................................................3

Fed. R. Civ. P. Rule 12(b)(6) .........................................................................................................3

Fed. R. Civ. P. Rule 15(a)(2) ........................................................................................................24

Local Government Code § 351.041 ...........................................................................................17, 19

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 ...............................................................................23

42 U.S.C. § 1983............................................................................................ 4, 16, 18-20, 23

42 U.S.C. § 1988............................................................................................................................23

TO THE HONORABLE COURT:

COMES NOW, Plaintiffs by and through there counsel of record and in response to Sheriff Joel W. Richardson's Motion to Dismiss "in his individual capacity" would show the Court as follows:

## I.

## SUMMARY

This is a federal civil rights case for injunctive relief and money damages against individual law enforcement officers in their individual capacities and Joel W. Richardson in his individual and official capacity. Randall County is also a Defendant, along with Correct Care Solutions, the company contracted by the County to provided healthcare to pretrial detainees and inmates.

Wendell Simmons was driving his vehicle on June 16, 2014 when he was pulled over by an Amarillo Police Officer and given some citations in connection with an expired license, failure to maintain financial responsibility, and the failure to have a driver's license. The officer discovered Wendell had outstanding tickets for animals running at large and animals not having vaccination tags and Wendell was arrested and taken to the Randall County Detention Center. Wendell told the booking officer that he had grandmal seizures and was on the medication Kepra. The booking officer indicated Wendell's speech was rapid, hard to understand, and hesitant or childlike. The evening that Wendell was booked into the County Jail, his daughter, Nikki Simmons, talked to Nurse Gardner to make sure the Jail was aware of his grandmal seizures and that he was on the medication Kepra.

Wendell never went before a Magistrate for arraignment and thus remained as a pretrial detainee.

1

No medical assessment was performed on Wendell on June 16, 2014.  On the morning of June 17, 2014, an Alcohol Withdrawal Assessment was performed and Wendell was started on a regime of Librium (thereby indicating he was subject to alcohol withdrawal symptoms).  The Jail and medical personnel never administered the complete regime of Librium to Wendell, although Wendell was in jail from June 16, 2014 through June 21, 2014.  Wendell was never treated with Kepra.

On June 19, 2014, Wendell was confused, disoriented, and hallucinating in that he thought a shower curtain was a lady talking to him. There was never a request for a psychological or behavioral examination requested by any of the jailers or medical personnel. On June 20, 2014, Wendell was reported as having fallen in his cell and he was solely administered acetametaphine.  When asked why he fell on June 20, 2014, Wendell responded that "he was in the outhouse and fell"; however, there was still no request for psychological or behavioral assessment.

On June 21, 2014, Wendell once again fell and upon his admission to Northwest Texas Hospital he was found to have a 3.3 cm splenic laceration, acute left posterior 10-12 rib fractures, acute left lateral maxillary sinus wall fracture, acute left orbital floor fracture, acute nasal bone fractures, a 5 cm laceration to the face, forehead, and nose, and an acute intracranial hemorrhage.  On June 22, 2014, Wendell underwent an emergency right side craniotomy for evacuation of a subdural hematoma.  The Northwest Texas Medical Center notes indicate Wendell "sustained an assault" resulting in the injuries.

Wendell never fully recovered from the subdural hematoma and died on April 1, 2015, without ever regaining his ability to walk, regain competency, or participate in any meaningful activity.

## II.

### RULE 12(b)(6) STANDARD OF REVIEW

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp v. Twombly*, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

A plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, as discussed in *Bishop v. Shell Oil Co.,* No. 07-2832, 2008 U.S. Dist. LEXIS 39820, 2008 WL 2079944, *1-2 (E.D. La. 5/16/08) (Engelhardt ▾, J), Rule 8 mandates that the complaint provide the defendant with "fair notice of what the plaintiff's  claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema,* 534 U.S. 506, 511, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (internal citations omitted); *see also Christopher v. Harbury,* 536 U.S. 403, 416, 122 S. Ct. 2179, 2187, 153 L. Ed. 2d 413 (2002) (the

elements of the plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant"). "[T]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Twombly,* 550 U.S. at 570)). The degree of required specificity, however, depends on context, *i.e.,* the type of claim at issue. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

At the motion to dismiss stage, "only minimal factual allegations should be required" in § 1983 suits against municipalities, and "those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011); see also *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (rejecting the Fifth Circuit's then-existing heightened pleading requirement in § 1983 cases alleging municipal liability).   Nevertheless, "a plaintiff suing a municipality must provide fair notice to the defendant, and this requires more than genetically restating the elements of municipal liability." *Thomas*, 800 F. Supp. 2d at 844-45.

### III.

### LIMITED DISCOVERY NECESSARY

Although qualified immunity is a defense where it applies, a "party asserting a qualified immunity defense is not immune from all discovery, only that discovery which is avoidable or overly broad." *Guillot v. Day,* 95 F.2d 1127 (5th Cir. 1996) (quoting *Wicks v. Miss. State Emp't Servs.,* 41 F.3d 991, 994 (5th Cir. 2012).  Indeed, a court may defer its qualified immunity ruling if further development is necessary to ascertain the availability of that defense. *Backe v. LeBlanc*, 691 F.3d 634, 648 (5th Cir. 2012).   Specifically, when a district court cannot rule on the

immunity defense without first clarifying the facts relating to the asserted immunity, and when a discovery order is narrowly tailored to uncover only those facts needed to rule on the immunity claim, the discovery order is neither avoidable nor overly broad.  *Id.*; *Wicks,* 41 F.3d at 995.

The first step in a district court's analysis concerning whether to permit discovery to determine the viability of a qualified immunity defense is consideration of whether the plaintiff's pleadings assert facts, which, if true, would overcome the defense of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc); *Wicks*, 41 F.3d at 995.  If the complaint satisfies the pleading standard, the district court should then consider whether it is able to rule on the immunity defense without further clarification of the facts.  See *Backe*, 691 F.3d at 648; *Wicks,* 41 F.3d at 995*; Lion Boulos v. Wilson,* 834 F. 2d 504, 507-08 (5th Cir. 1987).  If the district court needs additional clarification of the facts, then it may permit limited discovery as necessary to clarify the facts upon which the immunity defense turns. *Backe*, 691 F. 3d at 648.

Plaintiff requests that the Court stay its ruling on the pending Motion to Dismiss until limited discovery is allowed to develop the facts necessary for the Court to rule on the issue of qualified immunity.

## IV.

## SHERIFF RICHARDSON IS NOT ENTITLED TO QUALIFIED IMMUNITY IN HIS INDIVIDUAL CAPACITY

The Fifth Circuit applies "a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity." *Cantrell v. City of Murphy*, 666 F. 3d 911, 922 (5th Cir. 2012).  First "we determine whether, taking the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights."  *Id.*  (quoting *Freeman v. Gore*, 483 F. 3d 404, 410 (5th Cir. 2007)).  Second, we ask "whether the defendant's actions were objectively unreasonable in light of clearly established

law at the time of the conduct in question." *Id*. (quoting *Freeman,* 483 F. 3d at 411).  The Court

may exercise its discretion in deciding which of the two prongs to address first.  *Id.*

In determining whether a constitutional violation occurred, the court's final inquiry is

"whether the officers' actions are objectively reasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*,

490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

The Plaintiffs have made claims for excessive use of force by the jailers, failure to

protect, and inadequate medical care of a pretrial detainee.  Plaintiffs are making claims against

Sheriff Richardson for failures in policy making, supervision, and inadequate training.

The first analysis must therefore be whether Plaintiffs have adequately pled their claims

against the individual jailers and medical providers.  Hereinafter, for sake of brevity, any time

there is a reference to a jailer, defendant, individual defendant, or individual the reference

includes both jailers and medical providers employed by Correct Care Solutions.

**A.      Claim of Excessive Force Against a Pretrial Detainee**

**1.      Constitutional Violation**

Under the case of *Kingsly v. Hendrickson,* 135 S. Ct. 2466, 192 L. Ed. 2d 416,

2015 WL 2473447, at *6-8 (2015), the court noted that pretrial detainees (unlike convicted

prisoners), cannot be punished at all, much less 'maliciously and sadistically".  The court

thereafter held "that the appropriate standard for a pretrial detainee's excessive force claim is

solely an objective one."  *Id.*  Thus there is a different standard in determining a Fourteenth

Amendment pretrial detainee's claims and the Eighth Amendment convicted prisoner's claims.

The current factors to be considered are (1) extent of injury; (2) need for application of force; (3)

relationship between the need for and the amount of force used; (4) threat reasonably perceived

by officers; and (5) efforts made to temper severity of forceful response.  *Id*., at 2473 (citing *Graham, at 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443*); also see *Thompson v. Beasley*, USDC Northern District of Mississippi (2015); 309 F.R.D. 236, 92 Fed. R. Serv. 3d (*Callaghan*) 317.

### a.  Factor One.

Here the Plaintiffs have pled that Wendell received not only a subdural hematoma requiring immediate surgery, but also a lacerated spleen, broken ribs, and numerous broken or fractured facial bones, and a 5 cm facial laceration. These injuries ultimately led to his death.  Such injuries are extensive and sufficiently serious since the ultimate injury is death.  The injuries are thus sufficiently serious.

### b.  Factor Two.

Plaintiffs are unaware of any need of application of any force and has pled that there was no need for force.  Doc. 2, Paragraph 4.52.

### c.  Factor Three.

Wendell suffered severe head injuries as well as broken ribs and a lacerated spleen, but nothing provided by the Defendants have indicated a need for the use of such amount of force.

### d.  Factor Four.

Plaintiffs are aware of no threat that could have been received by the officers and, thus, it was not objectively reasonable for Wendell to suffer any injuries, much less the severe injuries he suffered.

e.        **Factor Five.**

Plaintiffs are not aware of any efforts made by the individual defendants to temper the severity of their forceful response which resulted in significant injuries and ultimately death.

Plaintiffs know that Wendell went into the jail without any physical injuries (except perhaps blood in his ear), but came out with critically serious injuries resulting in his death. Defendants have refused to provide information regarding Wendell to Plaintiffs as stated at Doc. 2, paragraph 5.16.  Without such requested information Plaintiff is unable to provide additional information to the Court on these factors and thus requests limited discovery on these issues.

2.        **Clearly established**

At least since 1994, in *Farmer v. Brennan*, 511 U.S. 825, the Supreme Court ruled that the Eighth Amendment requires that prison officials "provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to ensure the safety of the inmates."  *Gates v. Cook,* 376 F. 3d 323, 332 (5th Cir. 2004).  Furthermore, under the due process clause, a pre-trial detainee may not be punished prior to an adjudication of guilt.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

The Court in *Wolfish* explained that a person lawfully committed to pretrial detention has not been adjudged guilty of any crime he has only had a judicial determination of probable cause as a prerequisite to the extended restraint of his liberty following arrest and if such a restriction or condition of pretrial detention is not reasonably related to legitimate goal for which the detention is made – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the government action is punishment that may not be constitutionally inflicted on detainees."  *Id*. at 535, 536 and 539.  Under *Bell v. Wolfish*, the due process rights of pretrial

detainees are at least as great as the protections available to convicted prisoners under the Eighth Amendment.  *Id.* at 545.

Plaintiff has pled that the deprivations to Wendell were "sufficiently serious"— "conditions of confinement that deprive an inmate of the "the minimal civilized measure of life's necessities… are sufficiently grave to form the basis of an Eight Amendment violation", *Id.*, at 207; citing, *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), and the jailers and medical providers acted with deliberate indifference to that risk by failing to take reasonable measures to abate it." *Id.*, citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Plaintiffs' have properly pled that the individual jailers violated Wendell's 14th Amendment Rights as a pre-trial detainee, that such rights were clearly established at the time, and the actions of the individual defendants were not objectively reasonable and were conducted with deliberate indifference. Complaint, Paragraphs 4.42, 4.46, 4.47, 4.51, 4.52, 4.54, 4.55, 4.56, 5.2-5.21. 6.2-6.13  The liability of Defendant Richardson will be discussed in detail at the end of this Article on this issue.  In the alternative, Plaintiffs should be allowed limited discovery as hereinabove requested at Article III.

Plaintiff has analyzed the claim for excessive force under the parameters of the *Kingsley* case, but authority exists as described at Article IV B of this brief that a more relaxed standard may be applicable under the Fifth Circuit case of *Hare v. City of Corinth, Miss*., 74 F.3d 633 (5th Cir. 1996) (*en banc*).

**B.      Claim of Denial of Adequate Medical Care**

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989), the Supreme court stated "When the State takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being … The affirmative duty to protect arises … from the limitation which it has imposed on his freedom to act on his own behalf."   The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourtee*nth Amendment. Hare v. City of Corinth, Miss*., 74F.3d 633,639 (5th Cir. 1996 (en banc).   Though the state has a recognized interest in detaining defendant for trial, the substantive limits on state actions by the Due Process Clause provide that the state cannot punish a pretrial detainee.  *Bell v. Wofish*, 441 U.S. at 535.   In the Fifth Circuit the legal standard to be used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission  an individual state official. *Hare*, 74 F. 3d at 644-45.

In the case before the Court the Plaintiffs are challenging the "condition" of Wendell's confinement, as well as an "episodic-acts-or omissions claims."

**1.      Condition of Confinement**

A challenge to a condition of confinement is a challenge to "general conditions, practices, rules, or restrictions of pretrial confinement."  *Hare*, 74 F. 3d at 644.  "A condition may reflect an unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct the [jail] officials, to prove an intended condition or practice .'" Id.  In such event the Fifth Circuit applies the test established in *Bell v. Wolfish*, and asks whether the condition is "reasonably

related to a legitimate governmental objective." *See Hare*, 74 F. 3d at 646: *Bell*, 441 U.S. at 539.

"[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." Bell, 441 U.S. at 539. Because "[a] State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction," the plaintiff need not demonstrate that the state actor or municipal entity acted with intent to punish.  Hare, 74, F. 3d at 644.  "[A] true jail condition case starts with the assumption that the State intended to cause the pretrial detainee's alleged constitutional deprivation." Id. at 644-645.

"Punishment" is "usually the manifestation of an explicit policy or restriction."  *Shepherd v. Dallas County*, 591 F.3d at 452 (citing *Scott v. Moore*, 114 F.3d at 53 n.2); see *Duvall*, 631 F.3d at 207 (holding that "an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction"); *Hare,* 74 F.3d at 644. However, in some cases, the impermissible punishment "may reflect an unstated or *de facto* policy." *Shepherd*, 591 F.3d at 452.  In *Shepherd*, the Fifth Circuit explained that a *de facto* policy may be found in a pattern of conduct that is "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice."  *Id.* (quoting *Hare*, 74 F.3d at 645); see *Duvall,* 631 F.3d at 207; *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347-49, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981); see *Duvall v. Dallas Cnty*, 631 F.3d 203, 206-07 (5th Cir. 2011).

Plaintiffs have alleged that Randall County and Defendant Richardson, among other policies and customs, failed to either implement or enforce policies and customs in recognition

of persons with mental issues and the proper procedures to follow; monitoring of persons with mental issues; deferring decisions to send pretrial detainees to Correct Care Solutions; allowing officers to assault persons, allowing others to attack pretrial detainees; allowing non-medical personnel to perform medical intake and completion of medical and mental assessments; allowing untrained officers to complete medical and mental assessments of pretrial detainees upon admission; failing to require periodic meetings to assess needed improvements in delivery of adequate medical and mental care for pretrial detainees; failing to adopt a medical service plan that meets Natural Commission on Correctional Health Care Standards for health services at county jail; discouraging medical staff from reporting mental issues to their supervisors in a timely and appropriate manner; discouraging medical staff from ordering or demanding immediate care and treatment of pretrial detainees for arraignment within 48 hours of arrest; failing to report to a magistrate within 72 hours that there is reasonable cause to believe a pretrial detainee has a mental illness. (Doc. 2, pp. 14-15, ¶¶ 5.17(a) through (r)).

The policies, *de facto* policies and customs of Randall County and Defendant Sheriff Richardson, serve no legitimate governmental interest and Wendell suffered serious injuries and ultimately death because of implementation of such policies, *de facto* policies, and customs. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476, 87 L. Ed. 2d 612 (1985). Plaintiffs have thus properly pled under the "conditions of confinement" a proper cause of action.

## 2.     Episodic-Acts-or-Omissions

An episodic-acts-or-omissions claim, by contrast, "faults specific jail officials for their acts or omissions." *Hare,* at 452. The relevant question becomes "whether that official breached his constitutional duty to tend to the basic human need of the persons in his charge." *Id.*

at 645.   Such is violated when the official had "subjective knowledge of a substantial risk of serious harm" to the detainee and responded to that risk with deliberate indifference. *Id.* at 650.

In *Shepherd*, the Fifth Circuit remarked that "a plaintiff's claim, properly characterized, faults specific jail officials for their acts or omissions, because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition."   *Shepherd*, 591 F.3d at 452.   The *Shepherd* court stated that,

> [i]n these cases, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.

*Id.* (quoting *Scott v. Moore*, 114 F.3d at 53).   The Fifth Circuit held that, in these "specific acts or omissions" cases, "[b]ecause the focus of the claim is one individual's misconduct, the detainee is required to prove intent – specifically that one or more jail officials 'acted or failed to act with deliberate indifference to the detainee's needs.'" *Id.* (quoting *Hare*, 74 F.3d at 648).

Numerous courts have noted the necessity of attending to mental health needs of prisoners.   See *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) (claim stated for failure to attend to mental health needs); *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (same); *Woodward v. Corr. Med. Servs.* 1237, 1253 (9th Cir. 1982) (same); *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1171-72 (11th Cir. 1995) (claim stated when inmate alleged that city's failures to adequately train guards to accommodate mentally ill prisoners represented deliberate indifference to inmate's mental health).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.   *Estelle v. Gamble*, 429 U.S. 97,

104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 197-, 128 L. Ed 2d 811 (1994).  The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk.  *Id.*  The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it.  *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.2d 257, 262 (5th Cir. 2002).

"A prison guard is deliberately indifferent if he intentionally denies or delays access to medical care."  *Walker v. Butler,* 967 F.2d. 176, 178 (5th Cir. 1992).  "The mere delay of medical care can … constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm."  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (alterations in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Furthermore, severe pain caused by the refusal to immediately treat pain can support a claim of deliberate indifference grounded in delayed treatment.  See *Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th Cir. 1999); see also *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("We have held that the substantial harm requirement may be satisfied by … considerable pain.").

At the time of Wendell's pretrial detention and he was denied adequate and timely treatment, the law was clearly established that a prison inmate could demonstrate an Eighth Amendment violation by showing that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Easter*, 467 F.3d at 464 (quoting *Domino*, 239 F.3d at 756).  Plaintiffs are referencing Eighth Amendment cases since the

Plaintiffs understand the decision announced by the *Hare* court is that the responsible parties must be shown to have been subjectively aware of the risk and yet consciously disregarded it.

The Plaintiff has pled that there were episodes in which the jailers were placed on notice of Wendell's mental condition and issues, that they were aware of his altered mental status, yet consciously regarded the risk, thus properly pleading deliberate indifference to the risk. Plaintiffs have pled at Doc. 2, ¶¶ 4.3, 4.5., 4.6, 4.9-4.12, 4.13-4.17, 4.18-19, 4.24, and 4.26 the circumstances and incidents that placed the individual jailers and nurses on notice and made them aware of Wendell's mental issues, yet as pled at Doc. 2, ¶¶ 4.51 and 4.53 that they did nothing. The jailers were aware of the risk yet consciously disregarded the risk which resulted in Wendell's serious injuries and eventual death. Such actions are thus point derivately to a policy, custom, or rule of Sheriff Richardson and Randall County. See *Shepherd*, 591 F. 3d at 542.

## C.      Failure to Protect

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Defendant prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Cantu*, 293 F.3d at 844 (citing *Farmer*, 511 U.S. at 847).

Plaintiffs reference the standards established by the *Hare* case described above. Plaintiffs do not make an episodic-acts-or-omissions claim under this action, but does adopt the "condition of confinement" standard previously discussed. Plaintiffs have properly pled that he should be protected from others (Doc. 2, ¶ 2.6), that he suffered severe injuries while in the jail which doctors at Northwest Texas Hospital described as an "assault" (Doc. 2, ¶¶ 4.33-4.44), alleged

others in custody used force on Wendell (Doc. 2, ¶ 4.43), alleged Defendants were aware of the wrongful conduct but did not take action to correct it (Doc. 2 ¶ 4.48), that the individual defendants showed deliberate indifference to the substantial risk of harm to Wendell under color of state law (Doc. 2 ¶ 7.4), described the risk (Doc. 2 ¶ 7.5), alleged defendants were deliberately indifferent to that risk (Doc. 2 ¶ 7.6), that the risk was obvious that there was a substantial risk to Wendell's safety (Doc. 2 ¶ 7.8), that the defendants drew the inference that there was a substantial risk of serious harm but failed to act on such knowledge (Doc. 2 ¶ 7.12), and that such deliberate indifference resulted in serious injuries and eventual death (Doc. 2 ¶ 7.14).

Plaintiff has sufficiently pled the claim against Defendants for failure to protect.

## V.

## CLAIMS AGAINST RICHARDSON IN HIS OFFICIAL CAPACITY

Defendants assert that the acts of Sheriff Richardson in his official capacity are actually those of Randall County.  It appears that Defendants believe Sheriff Richardson should be dismissed from this suit in his "official capacity."

A suit against an official in his official capacity is a suit against the employing governmental entity, not the individual officer.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a party in the violation of federal law.'"  *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).

Liability of a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611

(1978); *Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009). These three elements are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

In the instant case, the Plaintiffs have also sued Randall County.  The Defendant Randall County has also filed a Motion to Dismiss (Doc. 9) which is currently pending before this Court. Under Local Government Code § 351.041, the sheriff of each county is the keeper of the county jail and shall safely keep all prisoners committed to the jail by lawful authority and the sheriff shall exercise supervision and control over the jail.  Acts taken by the sheriff in his official capacity are acts of the county's final policymaker with respect to the county jail and, hence, are acts of the county.  *Turner v. Upton County*, 915 F.2d 133, 136-37 (5th Cir. 1990); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir., 1980).

Plaintiffs believe that both Randall County and Sheriff Richardson, in his official capacity, should remain as defendants in this matter.  If for some reason Randall County were to be dismissed, and if Sheriff Richardson is dismissed in his official capacity, the Plaintiffs would be left without a responsible entity.

## VI.

## CLAIMS AGAINST SHERIFF RICHARDSON IN HIS INDIVIDUAL CAPACITY

At the time Wendell was placed in the Randall County Jail, the booking officer indicated his speech was rapid, hard to understand, and childlike.  The booking officer noted Wendell had grandmal seizures and was on Kepra for such condition.  Wendell's daughter called that night to be sure the Randall County Jail was aware of her father's condition and the medication he needed.

On the day following the booking, an Alcohol Withdrawal Assessment was performed and Wendell was placed on a regime of Librium to treat him for the withdrawal symptoms. However, Wendell was never seen by a doctor from the entire time of his incarceration from June 16, 2014, through June 21, 2014; he was not referred for a behavioral or psychological exam although he was hallucinating and talking to non-existent people.   He was never administered the full regime of Librium.   Wendell was never prescribed or administered the medication Kepra, which was prescribed by his family doctor.

The Fifth Circuit has held supervisors "liable for constitutional violations committed by subordinate employees when supervisors act, or fail to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 255 (Fifth Circuit 2005).   Supervisory liability requires a constitutional violation by a subordinate.   See *Atteberry*, 430 F. 3d at 255.   The subordinates violations have been previously explained in this Article at Paragraphs A, B, and C.

When a plaintiff attempts to plead a violation of *§ 1983* through the unconstitutional actions or omissions of an individual county policymaker, the policymaker's subjective intent becomes the critical factor--specifically, whether the county policymaker acted with deliberate indifference to the pretrial detainee's constitutional rights. *See Shepherd v. Dall. Cnty., 591 F.3d 445, 452 (5th Cir. 2009)*; *Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001)*. A county policymaker acts with the requisite deliberate indifference under *§ 1983* where (1) the policymaker knew about the inmate's serious medical condition and (2) nevertheless disregarded an excessive risk to the inmate's health or safety. *See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006)*; *Stewart v. Murphy, 174 F.3d 530, 533-34 (5th Cir. 1999)*.

In the context of the medical needs of prisoners, deliberate indifference can occur when "an official knows or should know that certain treatment is necessary, and he delays in providing such treatment when he reasonably should know that such delay can be hazardous." *Howell v. Evans, 922 F.2d 712, 720 (11th Cir. 1991)* (citing *Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 & n.11 (1976))*; *see also Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)* (finding that a plaintiff could sustain a claim for medical indifference where government officials refused to treat him or intentionally treated him incorrectly).

Here, Plaintiffs have alleged that Defendant Richardson, Sheriff of Randall County, intentionally denied Wendell timely and adequate medical care during his six days at the Randall County jail, leading to Wendell's eventual death on April 1, 2015. Plaintiffs also claim that jailers exerted excessive force on Wendell or failed to protect Wendell from others who exerted excessive force on him.  As an initial matter, Sheriff Richardson clearly qualifies as a Randall County policymaker for purposes of *§ 1983* liability. *See Colle v. Brazos Cnty., Tex., 981 F.2d 237, 244 (5th Cir. 1993)* (describing the county sheriff as a county policymaker because he set law enforcement goals for the county and determined how those goals would be achieved).

Acts taken by the Sheriff are acts of the County's final policymaker with respect to the county jail and, hence, are acts of the County.  Tex. Local. Gov't Code § 351.041; *Turner v. Upton Cnty.*, 915 F.2d 133, 16037 (5th Cir. 1990); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980).

The facts alleged in Plaintiffs' complaint, if true, would state a cause of action under *42 U.S.C. § 1983* based on the deliberate indifference of an individual county policymaker to Wendell's constitutional rights. First, Plaintiffs allege facts which suggest that Sheriff

Richardson, a policymaker, knew of excessive force being used on pre-trial detainees, that others in custody used force upon Wendell, failure to take Wendell for arraignment in 48 hours, and failure to provide timely, adequate and appropriate medical services to Wendell, including psychological assessments, (Doc. 2, paragraphs 4.42-4.56, 5.8-5.21, 6.9-6.13, 7.2-7.14, 8.2-8.27, and 9.2-9.12).   Specifically, Paragraph 5.8 of Doc. 2 alleges that the actions and omissions of Defendant Richardson were committed under color of law and with deliberate indifference to clearly establish constitutional rights of Wendell.

Second, Plaintiffs have alleged facts that county policymakers disregarded an excessive risk to Wendell's health and safety--the second element required to prove deliberate indifference under *§ 1983*. Plaintiffs allege that Kepra was not provided to Wendell; although it has been prescribed by his family doctor and the jail was informed of such, he was placed on Librium initially but was not given the proper dosage, that when he came into the jail he did not have physical problems but left the jail with a subdural hematoma that necessitated immediate surgery, broken facial bones, 3.3 laceration to spleen, broken ribs, nasal bone fractures, 5 cm laceration to the face and acute intracranial hemorrhages.

Jail personal made entries about Wendell having hallucinations, falling off the outhouse, otherwise falling, talking to non-existent people, experiencing alcohol withdrawal (thus the Librium) and DT's, but completely failed to provide Wendell with timely and adequate medical care. Such alleged conduct, if true, amounts to an intentional denial of medical care--and not simply negligence or disagreement regarding matters of medical judgment. *See Lawson v. Dall. Cnty., 286 F.3d 257, 263 (5th Cir. 2002)* (upholding district court's findings that jail officials acted with deliberate indifference to the medical needs of a prisoner where the officials were

aware of the prisoner's specific medical needs, where they were told to provide certain medical care to the prisoner, and where they nevertheless failed to provide such care).

Plaintiffs have pled facts which would, if true, state a valid cause of action under *§ 1983* sufficient to survive a *Rule 12(b)(6)* motion to dismiss.  In the alternative Plaintiff's should be allowed limited discovery as provided hereinabove at Article III.

**VIII.**

**PLAINTIFFS' HAVE PROPERLY PLED CLAIMS
UNDER THE AMERICANS WITH DISABILITIES ACT ("ADA")
AND THE REHABILITATION ACT**

In addition to their *§ 1983* claims, Plaintiffs allege violations of the Americans with Disabilities Act ("ADA") (codified at *42 U.S.C. §§ 12101 et seq.*) and the Rehabilitation Act (codified at *29 U.S.C. §§ 701 et seq.*). Both the ADA and the Rehabilitation Act require public entities--or private entities receiving federal funding--to provide reasonable accommodations to assist disabled person in accessing public programs and services. *See 42 U.S.C. § 12112(b)(5)(A)*; *Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 222 (5th Cir. 2011)*. Establishing a prima facie case of discrimination under the ADA requires the plaintiff to prove (1) that he is a qualified individual under the ADA; (2) that he is being excluded from participation in, or is being denied benefits, services, programs, or other activities for which a public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *See Melton v. Dall. Area Rapid Transit, 391 F.3d 669, 671-72 (5th Cir. 2004)*.

The Rehabilitation Act is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the Rehabilitation Act applies to any federally funded programs and activities, whether public or

private. *See Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010)*. Claims under both Acts are analyzed similarly. *See Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011)*; *Kemp, 610 F.3d at 234* ("[f]he RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts"). Thus, the Court will treat Plaintiffs' ADA and Rehabilitation Act claims coextensively and will analyze them together, as though they were a single claim.

For purposes of their Motion to Dismiss, Defendant question if this claim is brought "against Randall County only or Sheriff Richardson in his individual capacity". Richardson's Motion to Dismiss, page 10 Paragraph F. The claim is brought against Randall County as stated at Paragraph 11.1 of the Complaint, Doc. 2, page 27, paragraph 11.1; however in Paragraphs 11.3, 11.4, and 11.6 Plaintiff references the "Randall County Jail", as well as Paragraph 11.5 in which the County Sheriff (Defendant Richardson) is also mentioned.

It is the intention of Plaintiff to name Randall County as the Defendant as well as Defendant Richardson in his "official capacity". To the extent it appears Defendant Richardson was included in his "individual capacity", such claims will be dismissed.

However, Defendant Richardson is included as a Defendant under these claims insofar as he is a policy maker for Randall County and to the extent he is responsible for securing compliance with the ADA and Rehabilitation Act at the Randall County Jail.

## VIII.

## PLAINTIFFS' WRONGFUL DEATH AND SURVIVAL CLAIMS

Defendant asserts that Plaintiffs have pled state law wrongful death and survival claims in their complaint and that these claims are barred by the doctrine of sovereign immunity. *See City of Amarillo v. Martin, 971 S.W.2d 426, 427 (Tex. 1998)* ("[u]nder the common-law doctrine

of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act waives immunity"). Furthermore, Defendant argues that the Texas Tort Claims Act does not waive sovereign immunity in this case because the conduct at issue did not involve "the operation or use of a motor-driven vehicle" or "a condition or use of tangible personal or real property." See Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

Contrary to Defendant's contentions, Plaintiffs do not assert any stand-alone state law claims in their complaint that would be barred by the doctrine of sovereign immunity. The wrongful death and survival claims are listed in the "Damages" section of the complaint and are merely part of the remedies that Plaintiffs seek for their *§ 1983*, ADA, and Rehabilitation Act claims.

The Fifth Circuit has held that *42 U.S.C. § 1988* incorporates state law wrongful death and survival remedies under *§ 1983*, thus allowing the surviving relatives of an individual killed as a result of a *§ 1983* violation to recover for their own injuries arising out of the wrongful death. *See Rhyne v. Henderson Cnty., 973 F.2d 386, 390-91 (5th Cir. 1992).* Because the wrongful death and survival remedies arise from *§ 1983* rather than from state law, the Texas Tort Claims Act does not operate to immunize Defendant from liability. *See Brown v. Wichita Cnty., Tex., CIV.A. 7:05-CV-0108O, 2009 U.S. Dist. LEXIS 68957, 2009 WL 2393821, at *4 (N.D. Tex. Aug. 4, 2009)* [*28] , *aff'd sub nom. Brown v. Bolin, 500 F. App'x 309 (5th Cir. 2012)* ("if a state wrongful death claim is brought in conjunction with a *section 1983* action, the county is no longer immune, as any attempt to provide immunity over and above those already provided in *Section 1983* directly violates federal law").

Plaintiffs have properly pled their wrongful death and survival claims.

## IX.

## EXEMPLARY/PUNITIVE DAMAGES

Defendant Richardson argues that "Plaintiffs fail to state a claim for exemplary or punitive damages" because the complaint does not identify actions taken by him that were motivated by evil intent or reckless callous indifference to the Plaintiffs' rights.  A plaintiff is permitted to recover punitive damages "against a state official acting in an individual capacity pursuant to a § 1983 claim." *Ibrahim v. City of Houston, TX, No. CIV.A. H-07-4329,* 2008 U.S. Dist. LEXIS 57135, 2008 WL 2962887, at *7 (S.D. Tex. July 29, 2008); see also *Smith v. Wade*, 461 U.S. Dist. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).  A court can award punitive damages where the defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Barrow v. Greenville Indep. Sch. Dist.*, *No. 3:00-CV-0913-D,* 2005 U.S. Dist. LEXIS 16043, 2005 WL 1867292, at *12 (N.D. Tex. Aug. 5, 2005) (quoting *Williams v. Kaufman Cnty.,* 352 F.3d 994, 1015 (5th Cir. 2003)).

Plaintiffs' claims for punitive damages against Defendants should not be dismissed at this state of the proceedings.

## X.

## LEAVE TO AMEND

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Following the Supreme Court's guidance, the Fifth Circuit uses five factors to determine whether to grant a party leave to amend a complaint: 1) undue

delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Absent any of these factors, leave should be "freely given." *Foman*, 371 U.S. at 182.

None of the *Foman* factors are applicable in this case and thus Plaintiffs request the Court stay its determination of Defendant Richardson's Motion to Dismiss to allow limited discovery and thereafter allow Plaintiffs to amend their Complaint in accordance with the evidence discovered.

Respectfully submitted,

FARGASON, BOOTH, ST. CLAIR,
RICHARDS & WILKINS, LLP
4716 Fourth Street, Suite 200
Lubbock, TX 79416
P.O. Box 5950
Lubbock, TX 79408-5950
Telephone:    (806) 744-1100
Facsimile:    (806) 744-1170
Email:    damon@lbklawyers.com

By: _____
Damon Richards

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was delivered to opposing counsel via eservice this 23rd day of June 2016.

_____
DAMON RICHARDS

25